**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MARIETTE WEDYKE,**

              **Plaintiff,**          **CIVIL ACTION NO. 06-CV-14874-DT**

    **vs.**

                                 **DISTRICT JUDGE DAVID M. LAWSON**

**JOHN E. POTTER,**          **MAGISTRATE JUDGE MONA K. MAJZOUB**

              **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**      **RECOMMENDATION:**    Defendant's Motion for Summary Judgment filed on December

19, 2007 (docket no. 10) should be **GRANTED**, and this case should be dismissed.

**II.**      **REPORT:**

      *A.*      *Procedural History, Facts, and Claims*

      This is a civil rights action pursuant to Title VII of the Civil Rights Act of 1964 and the

Rehabilitation Act. Plaintiff is a white female postal employee. Defendant is the Postmaster

General. Defendant filed this Motion for Summary Judgment on December 19, 2007. (Docket no.

10). Plaintiff filed her Response on January 17, 2008. (Docket no. 12). All pre-trial matters have

been referred to the undersigned. (Docket no. 3). The Court dispenses with oral argument on this

motion pursuant to E.D. Mich. LR 7.1(e). This matter is therefore ready for ruling.

      Plaintiff alleges that between October 2000 and September 2002 she was discriminated

against in her employment at the George W. Young postal facility in Detroit, Michigan. (Docket

no. 1). She claims that Defendant failed to accommodate her disability (bilateral carpal tunnel

syndrome) and subjected her to racial discrimination through disparate treatment and a hostile work

environment. (*Id*.). Plaintiff is still employed at the postal facility and now works as a security monitor. (Docket no. 10, ex. 1, at 7). She previously worked as a flat sorter operator for about six years. In 2000 she was diagnosed with bilateral carpal tunnel syndrome. She began working in the manual flat sorter after she could no longer operate the flat sorter machine due to her impairment. In October 2000 she was assigned to the limited light duty (LLD) unit and hand cased mail for some time. She remained in that unit until September 2002, but her duties varied. In September 2002 Plaintiff started working as a security monitor where she remains now.

Plaintiff claims that between March 2001 and September 2002 the postal service failed to properly accommodate her disability. (Docket no. 12 at 19). She also claims that from October 2000 to September 2002 she was subjected to racial discrimination. (Docket no. 1). Defendant contends that Plaintiff has failed to carry her burden of showing that she was disabled, that she was subjected to an adverse employment action, and that she was subjected to a sufficiently severe hostile work environment. (Docket no. 10).

*B.    Standard of Review*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. (*Id.*). A mere scintilla of evidence is insufficient to defeat a supported motion for summary judgment;

rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). While the evidence itself need not be the sort admissible at trial, the evidence must be more than the non-movant's own pleadings. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir. 1990); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (explaining that the non-moving party may not rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact).

> C.     Analysis

Defendant moves for summary judgment on Plaintiff's claims of disability and racial discrimination. Plaintiff has not presented any direct evidence of discrimination. Therefore, she is presumed to be relying on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> 1.     Rehabilitation Act

Under the *McDonnell Douglas* framework, an element of the prima facie case for a Rehabilitation Act claim is that Plaintiff be an individual with a disability. *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002). Plaintiff must demonstrate that she has raised a genuine issue of material fact that she has "a physical or mental impairment that substantially limits one or more of [her] major life activities." 42 U.S.C. § 12102(2)(A); *Gelabert-Ladenheim v. American Airlines, Inc.,* 252 F.3d 54, 58 (1st Cir. 2001). Defendant does not dispute that Plaintiff's carpal tunnel syndrome (CTS) qualifies as an impairment. The question is whether Plaintiff has shown that it substantially limits a major life activity. "Substantially limits" means unable to perform a major life activity or significantly restricted as to the condition, manner, or duration under which the average person in the general population can perform the same major life activity. 29 C.F.R. § 1630.2(j)(1);

*Amann v. Potter*, 105 Fed. App'x 802, 805 (6th Cir. 2004). Major life activities include caring for

one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and

working. 45 C.F.R. § 84.3(j)(2)(ii); *Adams v. Potter*, 193 Fed. App'x 440, 444 (6th Cir. 2006).

Plaintiff relies upon her deposition testimony to show that a genuine issue of fact exists.

However, the only copy of her deposition was submitted by Defendant, and it contains only excerpts

of Plaintiff's testimony. (Docket no. 10, ex. 1). To the extent that the pages relied upon by Plaintiff

have not been submitted to the Court, her assertions in her Response brief regarding such testimony

are unsupported argument.

Plaintiff testified during her deposition that her CTS had affected her in many ways including

everything she does with her hands. (Docket no. 10, ex. 1 at 13). Nevertheless, she stated that she

could brush her teeth, comb her hair, perform household chores, clean her house, do her laundry, go

shopping, and cook for herself. (*Id.*). When asked if there was anything in the form of recreational

activities that she could do prior to the time that she had carpal tunnel syndrome that she can no

longer do Plaintiff responded that she can no longer lift weights[1] and that she has trouble golfing.

(*Id.* at 14).

Plaintiff does not specifically argue that her CTS limits a particular major life activity.

(Docket no. 12). She argues in her brief that she testified during her deposition that she can no

longer case mail or perform jobs that are repetitious or robotic in nature. (*Id.* at 17). This reference

to her deposition testimony is on a page not submitted to the Court, however. She also alleges that

---

[1] Although lifting weights in general, as opposed to the recreational activity of weightlifting, may be a major life activity in itself, the only medical report in the record listing Plaintiff's restrictions restricted her from handcasing mail, using hands repetitively, performing tasks that are robotic in nature, and repetitively using hands in gripping motion. (Docket no. 10, ex. 20). No restriction was placed on Plaintiff lifting weights. It appears that one of Plaintiff's limited duty assignments was developed based on a restriction of not lifting over 15 pounds, but there is no medical report showing such a restriction. (*Id.* ex. 5).

CTS affects her driving, talking on the phone, lifting weights and golfing. The only aspects of these activities supported by the deposition excerpts are the recreational activities of weightlifting and golfing, however. Moreover, the fact that her CTS may affect her performance of certain activities fails to show that it significantly limits such a major life activity. Plaintiff also argues that she was answering the questions in her deposition based on her present condition with CTS which was allegedly much less severe than when she is alleging she was not properly accommodated. (*Id*. at 17). This explanation is not convincing when her questioner asked questions such as how "has it affected" how you care for yourself, and asked whether there was anything she could do before she had CTS that she can no longer do. (Docket no. 10, ex. 1 at 13-14). Moreover, the burden is still on Plaintiff to show that a genuine issue of fact exists on the question of whether she was disabled. If there is no evidence in the record that creates an issue of fact, summary judgment must be granted for Defendant.

Plaintiff fails to cite any more evidence in the record which shows that her CTS qualifies as a disability. Although not argued by Plaintiff, the Court has considered whether she has sufficiently shown that her CTS significantly limits her major life activity of working. She has failed to show any other possible basis for concluding that a major life activity is so limited. When the affected major life activity is working, the definition of "substantially limits" changes to "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 450-51 (6th Cir. 2007) (quoting 29 C.F.R. § 1630.2(j)(3)(i)). However, the inability to "perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Wysong*, 503 F.3d at 451.

Plaintiff does not contend that she is substantially limited in performing either a broad range of jobs in various classes or a class of jobs as compared to the average person. She testified that she can perform "a multitude of jobs." (Docket no. 10, ex. 1 at 18). Plaintiff said that she could lightly type and file and could do "any type of office work." (*Id*.). In *Bryson v. Regis Corp.*, 498 F.3d 561 (6th Cir. 2007), to determine whether a hairstylist was significantly restricted in her ability to perform either a class of jobs or a broad range of jobs in various classes, the court questioned whether she had established that she was barred from working in all jobs within the cosmetology field, or from holding a large number of jobs in other categories of employment. 498 F.3d at 576. Because Plaintiff now claims to be productively employed at the same postal facility where she has always worked and, factoring in her deposition testimony, the Court concludes that she can perform some jobs in the field of mail processing with her CTS. Also, there is no showing that she cannot perform a large number of jobs in other categories of employment. Plaintiff has therefore failed to show that a genuine issue of facts exists as to whether she is substantially limited in working.

Plaintiff has failed to establish the first element of her prima facie test. Her claim that Defendant violated the Rehabilitation Act should be dismissed.

### 2. Racial Discrimination Claims

#### A. Disparate Treatment

The elements of the prima facie case for disparate treatment are that she was a member of a protected class; that she suffered an adverse employment action; that she was qualified for the position; and that a person outside of the protected class was treated more favorably than she. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007). The key question is whether Plaintiff

has presented sufficient evidence that she suffered an adverse employment action under circumstances which give rise to an inference of discrimination.  (*Id*.).

An adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  The change must be materially adverse; it must be more than an inconvenience.  *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999).  Employment actions that are *de minimis* are not materially adverse and are not actionable under Title VII.  *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000).

Defendant contends that Plaintiff has failed to show that she suffered an adverse employment action.  Plaintiff responds by arguing that she has so shown by several incidents.  She first points to her contention that she and another white co-worker, Michelle Danielian, were the only two people required to sit in a specific seat in the LLD unit.  (Docket no. 12 at 20).  Plaintiff has submitted supporting affidavits creating a disputed issue of fact on this issue.  (*Id*. exs. 3, 5, 6, 7; docket no. 10, ex. 2 at 4).  A jury could find that she and a white co-worker were the only employees in the LLD unit who were assigned specific seats.

Plaintiff also points to the January 30, 2002 incident she had with co-worker Adams, an African-American male, in the LLD unit.  Plaintiff claims that Mr. Adams was intoxicated and that she was ordered to sit in a seat that happened to be beside him.  (Docket no. 10, ex. 2 at 5-6).  He became angry when the supervisor told him that Plaintiff had complained about him being intoxicated and "stinking."  He started to yell racial epithets at Plaintiff.  (*Id*. at 6).  He got out of his seat and stood behind Plaintiff putting her in fear of being physically harmed by him.  (*Id*. at 7).

The supervisor called someone on the phone and after a few minutes four other persons appeared and calmed Mr. Adams. Plaintiff, Adams, and several others went into an office and discussed the incident. (*Id*. at 7-8). Plaintiff and Mr. Adams agreed that the incident was a misunderstanding. Both employees received disciplinary action (a letter of warning) due to the altercation. (*Id*. exs. 6, 9).

Plaintiff next points to her reassignment to the LLD unit which she describes as going from performing all of the duties of a Flat Sorter Operator to nothing at all for a year and a half. (Docket no. 12 at 21). Plaintiff argues that other aspects of her work in the LLD unit qualify as an adverse employment action such as not being able to work overtime (because the job assignment did not warrant overtime) and temporarily not being able to work holidays. (*Id*. at 21-22). Plaintiff argues that her not being able to work overtime decreases her salary and future retirement income. (*Id*.).

The question is whether Plaintiff has submitted sufficient evidence to show that she suffered an adverse employment action under circumstances which give rise to an inference of racial discrimination. *Clay*, 501 F.3d at 703. Disciplinary actions such as letters of warning and oral and written reprimands do not normally rise to the level of adverse employment actions without some tangible job consequences. *See Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 613 (7th Cir. 2001) (oral and written reprimands and negative performance evaluations without more not adverse actions); *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999) (unfavorable performance evaluations, without more, not adverse action). Plaintiff has failed to show an adverse employment action by her claims of letters of warning being issued against her, being assigned specific seats, being temporarily denied access to the workplace, and being temporarily designated as AWOL during a leave period.

The remaining possible incidents of an adverse employment action, such as not being able to work overtime and on holidays, resulted from her transfer to the LLD unit. These may constitute an adverse employment action if, as Plaintiff alleges, her salary suffered due to this transfer. However, the record is clear that this transfer was due to Plaintiff's CTS impairment. (Docket no. 12 at 9 & ex. 2 (Plaintiff's claim for compensation for CTS); docket no. 10, ex. 5 (limited light duty assignment)). There is no showing that this reassignment was under circumstances which could give rise to an inference of racial discrimination. Moreover, there is no showing that Plaintiff's inability to work overtime, or on holidays for a limited period of time, was due to her race or that other employees in that unit were not treated the same way. Therefore, Plaintiff has failed to establish a prima facie case of racial disparate treatment based on her inability to work overtime or on holidays in the LLD unit.

Because Plaintiff has failed to show an adverse employment action with regard to her assertions of being assigned a specific seat, temporarily being denied access to the workplace, temporarily being designated as AWOL, and receiving letters of warning, and failed to show that the remaining incidents related to her assignment to the LLD unit were due to racial discrimination, Defendant's motion should be granted on her disparate treatment claim.

### B. Hostile Work Environment

In order to establish a prima facie case of racial discrimination by being subjected to a hostile work environment Plaintiff must prove that she is a member of a protected class; she was subjected to unwelcome racial harassment; the harassment was race based; the harassment affected a term, condition, or privilege of employment; and the defendant knew or should have known about the harassing conduct but failed to take any corrective or preventive actions. *Farmer v. Cleveland*

*Pub. Power*, 295 F.3d 593, 604-05 (6th Cir. 2002). Defendant argues that Plaintiff has not shown that she was subjected to conditions that are severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive. (Docket no. 10 at 21). Defendant discusses only Plaintiff's incident with co-worker Adams and argues that such an isolated incident of comments made by a co-worker does not make an environment hostile. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (simple teasing, offhand comments, and isolated incidents not enough to create hostile environment). To determine whether the environment is hostile the court considers the totality of the circumstances including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interfered with an employee's performance. *Clay*, 501 F.3d at 707.

The incident with co-worker Adams fails to establish by itself a hostile environment. It was an isolated incident. Plaintiff does not allege that she ever had another problem with him or a similar incident with another co-worker. Even under Plaintiff's version of events this incident was caused not by Plaintiff's race but because Mr. Adams was told that Plaintiff had said that he was "drunk and stinks." (Docket no. 10, ex. 2 at 6). There is no showing that the incident unreasonably interfered with an employee's performance. Moreover, Defendant immediately took action through its supervisors to end the altercation. Both workers were disciplined. Therefore, although this incident was more serious than an offhand comment and led to the exchange of racial epithets, it did not transform Plaintiff's working environment into a hostile environment.

The Adams incident when considered along with all the other incidents relied upon by Plaintiff does not show that Plaintiff worked in a hostile environment. Unlike the Adams incident,

most of the other incidents are attributed to management and not Plaintiff's co-workers. These other incidents include the seating assignments, the letter of warning for reading on the job, the AWOL charge, and temporarily being denied access to the workplace. They are for the most part isolated incidents. In *Clay* the plaintiff's complaint of fifteen incidents of harassment over a two-year period were not pervasive enough to find a hostile environment. *Clay*, 501 F.3d at 707. In reviewing the EEO investigative affidavit completed by Plaintiff (docket no. 10, ex. 2), the Court counts approximately sixteen incidents in this case over the approximately two-year period (docket no. 1) during which Plaintiff alleges that discriminatory acts occurred. These incidents fail to show that Plaintiff's workplace was permeated with discriminatory intimidation, ridicule, and insult or that the alleged harassment was severe enough to alter the conditions of Plaintiff's employment. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993).

Plaintiff has failed to carry her burden of showing that she was subjected to a hostile working environment. Defendant should be granted summary judgment on this claim.

## III. <u>NOTICE TO PARTIES REGARDING OBJECTIONS:</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*,

829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: March 13, 2008                    s/ Mona K. Majzoub
                                         MONA K. MAJZOUB
                                         UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that copy of this Report and Recommendation was served upon Mariette Wedyke and Counsel of Record on this date.

Dated: March 13, 2008                    s/ Lisa C. Bartlett
                                         Courtroom Deputy